[Cite as *State v. Griffin*, 2020-Ohio-3707.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-190369 |
| | | TRIAL NO. 18CRB-29119A |
| Plaintiff-Appellee, | : | |
| vs. | : | |
| | | *O P I N I O N.* |
| TERRY LEE GRIFFIN, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Municipal Court

Judgment Appealed From Is: Affirmed in Part, Reversed in Part, and Cause Remanded

Date of Judgment Entry on Appeal: July 15, 2020

*Paula Boggs Muething,* City Solicitor, *William T. Horsley,* Chief Prosecuting Attorney, and *Jon Vogt*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *David Hoffman*, Assistant Pubilc Defender, for Defendant-Appellant.

**CROUSE, Judge.**

{¶1}    Defendant-appellant Terry Lee Griffin was charged with improperly handling a firearm in a motor vehicle in violation of R.C. 2923.16(E)(1).  After a two-day bench trial, he was found guilty, sentenced to 180 days in jail, and ordered to pay a $100 fine and court costs.  The court suspended the sentence and placed Griffin on probation for one year.  The court also ordered that two handguns seized from him during the arrest be forfeited.

{¶2}    Griffin has appealed, arguing in four assignments of error that: (1) his conviction was based on insufficient evidence and was against the manifest weight of the evidence; (2) the trial court erred in sentencing him for a first-degree misdemeanor rather than a minor misdemeanor; (3) the trial court erred in forfeiting the handguns that were confiscated from him at the time of his arrest; and (4) R.C. 2923.16(E)(1) is unconstitutionally vague and violates Article I, Section 16 of the Ohio Constitution, and the Due Process Clause in the Fourteenth Amendment to the United States Constitution.

{¶3}    For the following reasons, we sustain Griffin's third assignment of error as to the Springfield firearm, but overrule it as to the Kel-Tek firearm.  We overrule all other assignments of error and affirm the judgment of the trial court in all other respects.

### Factual Background

{¶4}    This case arose out of a traffic stop that took place on November 6, 2018. Ohio Highway State Trooper Matthew Allard arrested Griffin for failing to

promptly inform Allard of his concealed handgun license ("CHL") and that he had two loaded firearms in the car.

{¶5}  Allard testified that he was on patrol as a member of the "Violent Crimes Squad" along with several Cincinnati police officers. Allard testified that he was instructed by officers in an unmarked police car to pull Griffin over for excessive window tint. When Allard approached Griffin's driver's side window, he explained the reason for the stop and asked for his identification. Griffin opened his wallet and gave Allard his driver's license. Allard testified that he looked inside the car and saw what he believed to be a CHL in Griffin's wallet. He asked Griffin if he had a CHL, and Griffin replied, "Yes." He then asked Griffin where the firearm was located, and Griffin told him that it was in between the center console and the driver's seat (the Springfield firearm). Allard testified that when he asked Griffin why he did not immediately inform him of his CHL and the firearm, Griffin said, "Oh, I forgot."

{¶6}  Allard testified that he was not sure exactly how much time had passed from the moment he approached the window to the moment Griffin informed him of his CHL and the firearm. He claimed that Griffin had time to notify him about his CHL and the firearm either after Allard informed him of the reason for the stop, or when Griffin retrieved his identification and handed it to Allard.

{¶7}  Allard testified that when he ordered Griffin out of the car, he asked if there was anything else in the car, and Griffin said, "No." He testified that it was not until he placed Griffin in handcuffs and walked him to the back of the car that Griffin informed him that there was another firearm (the Kel-Tek) in the car.

{¶8}  Griffin testified that when Allard approached his window, he had his identification and insurance card already in his hand. Griffin claimed that he thought

3

that he had his CHL in his hand as well, but it was in his wallet, "open in plain view where [Allard] could see it." Griffin testified that Allard asked about firearms "not even two seconds" after he walked up to the window. Griffin testified that through his CHL training he was aware that he was required to disclose the presence of all firearms in the vehicle if pulled over by law enforcement. He admitted that at first he only disclosed the Springfield firearm. He testified that he did not initially disclose the Kel-Tek because it was not his and he forgot that it was in the car.

{¶9} Video from Allard's police cruiser camera, which showed his interaction with Griffin, was admitted into evidence. No body camera video or audio of the interaction was admitted.

{¶10} A review of the cruiser camera video shows that at two minutes into the video, Allard approached Griffin's driver's side window. Allard appeared to take something in his hand at 2:06 and look down at it. He looked back in the car and appeared to continue talking with Griffin. At 2:18, Allard appeared to take something else in his hand and look down at it. He stood by Griffin's car, alternating between talking on his radio and talking to Griffin. At 3:15, Allard removed Griffin from the car and placed him under arrest.

### First Assignment of Error

{¶11} In his first assignment of error, Griffin argues that his conviction was not supported by sufficient evidence and was against the manifest weight of the evidence.

{¶12} The test for determining if the evidence was sufficient to sustain a conviction is whether, "after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any

rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt." *State v. MacDonald*, 1st Dist. Hamilton No. C-180310, 2019-Ohio-3595, ¶ 12, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).  It is a question of law for the court to determine, the court is not to weigh the evidence.  *MacDonald* at ¶ 12.

{¶13}  As relevant, R.C. 2923.16(E)(1) provides that no person who has been issued a CHL that is the driver or occupant of a vehicle stopped as a result of a traffic stop shall:

> Fail to promptly inform any law enforcement officer who approaches the vehicle while stopped that the person has been issued a concealed handgun license * * * and that the person then possesses or has a loaded handgun in the motor vehicle.

We note that it is undisputed that the handguns recovered from Griffin's car were loaded.

{¶14}  The first issue we must determine is the appropriate culpable mental state, the "mens rea."  R.C. 2923.16(E) provides five routes for a conviction of improperly handling firearms in a motor vehicle.  Those routes are laid out in subsections (1) through (5).  A conviction under R.C. 2923.16(E)(1) does not require a specified mens rea.  Rather, the legislature only specified a mens rea in subsections (E)(3)-(5).

{¶15}  The state argues that this is a strict liability offense and there is no culpable mental state.  Griffin argues that the mens rea is recklessness.

{¶16}  In *State v. Johnson*, 128 Ohio St.3d 107, 2010-Ohio-6301, 942 N.E.2d 347, ¶ 20-38, the Ohio Supreme Court analyzed three categories of offenses in order

5

to determine whether the statute in question imposed strict liability or required a mental state of recklessness. The court emphasized that "strict liability for an offense is the exception to the rule." *Id.* at ¶ 18.

{¶17} For the first category of offenses, the court examined R.C. 2901.21(B), and held that an offense is a strict liability offense when the section defining the offense does not specify a mens rea and also plainly indicates a purpose to impose strict liability. *Id.* at ¶ 19. However, when the section defining the offense does not specify a mens rea and the section does not plainly indicate an intent to impose strict liability, then the default mens rea of recklessness must be imposed. *Id.* at ¶ 19-24, discussing *State v. Adams* 62 Ohio St.2d 151, 152-153, 404 N.E.2d 144 (1980) (interpreting the endangering-children statute, former R.C. 2919.22(B)(2), as requiring a mens rea of recklessness), and *State v. Wharf,* 86 Ohio St.3d 375, 377, 715 N.E.2d 172 (1999) (interpreting second-degree robbery, as defined in R.C. 2911.02(A)(1), to be a strict liability offense).

{¶18} In the second category of offenses, the statutes have "specified a mens rea in one discrete clause or subsection of a section defining the offense, but not in another clause or subsection." *Johnson* at ¶ 26, 27-30 (citing as an example R.C. 2915.03, the offense of operating a gambling house). In determining legislative intent, courts are required "to examine the entire section defining the offense, not merely a clause or subsection." *Id.* at ¶ 31.

{¶19} In a third category offenses, the statutes "include a mens rea for one *element* but not for other elements in the section defining the offense." (Emphasis in original.) *Id.* at ¶ 38. In this category, "if the General Assembly intends for the additional elements to carry their own mens rea, they must say so. Otherwise, no

6

culpable mental state needs to be proved for those elements." *Id.* The *Johnson* court found that R.C. 2923.13(A)(3), having a weapon while under disability, fell under this third category of offenses. *See id.* at ¶ 42.

{¶20} The state argues that R.C. 2923.16(E)(1) falls within the third category of offenses and strict liability is the proper mens rea for the elements for which a mens rea is not specified by the legislature. Griffin argues that R.C. 2923.16(E)(1) falls within the first category of offenses that requires the mental state of recklessness to be imposed.

{¶21} We find that R.C. 2923.16(E)(1) falls within the second category of offenses discussed in *Johnson*. In *Johnson,* the court examined R.C. 2915.03, the offense of operating a gambling house, which states:

(A) No person, being the owner or lessee, or having custody, control, or supervision of premises, shall:

(1) Use or occupy such premises for gambling in violation of section 2915.02 of the Revised Code;

(2) Recklessly permit such premises to be used or occupied for gambling in violation of 2915.02 of the Revised Code.

*Johnson,* 128 Ohio St.3d 107, 2010-Ohio-6301, 942 N.E.2d 347, at ¶ 27-29.

{¶22} The court pointed to its prior case, *State v. Wac*, 68 Ohio St.2d 84, 428 N.E.2d 428 (1981), where it held that "[b]ecause the General Assembly specified the mental state of recklessly in subsection (A)(2) but did not specify a mens rea for subsection (A)(1), * * * the missing mens rea in (A)(1) was a plain indication of a purpose to impose strict criminal liability for a violation of R.C. 2915.03(A)(1)." *Johnson* at ¶ 30.

{¶23} R.C. 2923.16(E) is similarly constructed. It states in pertinent part:

(E) No person who has been issued a concealed handgun license * * * who is the driver or an occupant of a motor vehicle that is stopped as a result of a traffic stop * * * and who is transporting or has a loaded handgun in the motor vehicle * * * in any manner, shall do any of the following:

(1) Fail to promptly inform any law enforcement officer who approaches the vehicle while stopped that the person has been issued a concealed handgun license * * * and that the person then possesses or has a loaded handgun in the motor vehicle;

(2) Fail to promptly inform the employee of the unit who approaches the vehicle while stopped that the person has been issued a concealed handgun license * * * and that the person then possesses or has a loaded handgun in the commercial motor vehicle;

(3) Knowingly fail to remain in the motor vehicle while stopped or knowingly fail to keep the person's hands in plain sight at any time after any law enforcement officer begins approaching the person while stopped and before the law enforcement officer leaves, unless the failure is pursuant to and in accordance with directions given by a law enforcement officer;

(4) Knowingly have contact with the loaded handgun by touching it with the person's hands or fingers in the motor vehicle at any time after the law enforcement officer begins approaching and before the law enforcement officer leaves, unless the person has contact with the loaded

handgun pursuant to and in accordance with directions given by the law enforcement officer;

(5) Knowingly disregard or fail to comply with any lawful order of any law enforcement officer given while the motor vehicle is stopped, including, but not limited to, a specific order to the person to keep the person's hands in plain sight.

{¶24} The General Assembly specified the mental state of knowingly in subsections (E)(3)-(5), but did not specify a mens rea for subsections (E)(1) and (2). Statutes that fall under the third category of offenses require that the state prove a specified mens rea in order to achieve *any* conviction under that statute. *See* R.C. 2923.13 (state must prove that the offender knowingly acquired, had, carried, or used a firearm or dangerous ordnance in order to achieve a conviction). In contrast, for statutes that fall under the second category of offenses, the state can achieve a conviction under one subsection without proving a specified mens rea, but in order to achieve a conviction under another subsection, the state must prove a specified mens rea. *See Wac*, 68 Ohio St.2d at 87, 428 N.E.2d 428 (finding that the state is not required to prove a mens rea to achieve a conviction under R.C. 2915.03(A)(1), but must prove recklessness under subsection (A)(2)).

{¶25} Accordingly, pursuant to *Johnson*, we find that the missing mens rea in (E)(1) was a plain indication of a purpose to impose strict criminal liability for a violation of R.C. 2923.16(E)(1).

{¶26} Next, we turn our attention to how to interpret "promptly inform." Griffin argues that his conviction is not supported by sufficient evidence because only seconds had passed before Allard learned of the CHL and because his failure to

hand Allard the CHL was an accident. Griffin makes no argument on appeal regarding his delay in notifying the officer about both loaded firearms. At trial, his explanation for failing to inform Allard about the firearms was that he forgot.

{¶27} In *State v. Brown*, 168 Ohio App.3d 314, 2006-Ohio-4174, 859 N.E.2d 1017, ¶ 23 (11th Dist.), the defendant challenged former R.C. 2923.16(E)(3) (now (E)(1)) as unconstitutionally vague. Citing *Black's Law Dictionary*, the Eleventh District determined that to do something "promptly" is to do it "without delay and with reasonable speed." *Id.* Therefore, a person of common intelligence would readily understand "promptly inform" as requiring the CHL holder to inform the officer about the firearm "as soon as possible." *Id.*; s*ee State v. Loyd*, 2018-Ohio-4320, 121 N.E.3d 840, ¶ 22, 27 (5th Dist.) (the court adopted the analysis and rationale of *Brown*, and overruled the defendant's sufficiency and manifest-weight challenges of his conviction under R.C. 2923.16(E)(1) for failing to promptly inform the officer of his CHL and the presence of a firearm in the vehicle).

{¶28} The duty to "promptly inform" is for officer safety, so that during an interaction between an officer and a CHL holder, the officer is aware that there is a loaded firearm in the vehicle. *Brown* at ¶ 19. Allard testified that Griffin did not inform him of his CHL until after Allard explained the reason for the stop, Griffin handed him his identification, and Allard saw what be believed to be a CHL card in his wallet. It is undisputed that Griffin did not inform Allard of his CHL or the firearms until Allard asked about them. Griffin did not inform Allard of the Springfield, which was tucked in between the driver's seat and the center console, until Allard asked him where the firearm was located. Furthermore, Griffin did not

inform Allard of the second firearm, the Kel-Tek, until he was removed from the car and placed under arrest and Allard asked him if there was anything else in the car.

{¶29} Considering the evidence in the light most favorable to the prosecution, there was sufficient evidence presented that Griffin's notification of his CHL and the loaded firearms was not "as soon as possible" and did not meet the standard of informing "without delay and with reasonable speed." *See Brown* at ¶ 23. Therefore, the evidence was sufficient to sustain the conviction.

{¶30} Having determined that there was sufficient evidence presented to sustain the conviction, we consider Griffin's claim that his conviction was against the manifest weight of the evidence. In doing so, we review the record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the trier of fact, in resolving conflicts in the evidence, "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed." *Martin,* 20 Ohio App.3d at 175, 485 N.E.2d 717. Reversal of a conviction and a grant of a new trial should only be done in "exceptional cases in which the evidence weighs heavily against the conviction." *Id.*

{¶31} After a thorough review of the record, we find that this is not an exceptional case in which the evidence weighs heavily against the conviction. The trial court did not clearly lose its way and create a manifest miscarriage of justice. Accordingly, Griffin's conviction was not against the manifest weight of the evidence. The first assignment of error is overruled.

### *Second Assignment of Error*

{¶32} In his second assignment of error, Griffin argues that the trial court erred when it sentenced him for a first-degree misdemeanor and not a minor misdemeanor.

{¶33} A conviction under R.C. 2923.16(E)(1) is by default a first-degree misdemeanor. R.C. 2923.16(I). But, if:

> at the time of the stop of the offender for a traffic stop * * * any law
>
> enforcement officer involved with the stop * * * had actual knowledge of
>
> the offender's status as a licensee, a violation of division (E)(1) or (2) of
>
> this section is a minor misdemeanor.

*Id.*

{¶34} R.C. 2923.16(I) is written more broadly than R.C. 2923.16(E)(1), which proscribes a failure to promptly inform any officer who "approaches the vehicle." R.C. 2923.16(I) refers to any officer "involved with the stop," and clearly contemplates a greater number of officers who might know of the offender's status as a CHL holder than just the officer who approaches the offender's vehicle.

{¶35} Griffin argues that because Cincinnati Police Officer Kenny Dotson was "involved with the stop" and had actual knowledge of his status as a CHL licensee, the trial court should have determined that the offense was a minor misdemeanor.

{¶36} Dotson testified that he was a member of the "Violent Crimes Squad" and ordered Allard to pull Griffin over for a tinted window violation. He testified that he did not arrive "on scene" until Griffin was in handcuffs and in the back of Allard's cruiser. He claimed that "after later review" he remembered that he had

pulled Griffin over approximately nine months prior. During the previous encounter, Griffin was driving the same vehicle and informed Dotson that he possessed a CHL.

{¶37} Allard testified that at the time of the stop he did not know that Dotson was familiar with Griffin and had pulled him over in the past.

{¶38} We review misdemeanor sentences with considerable deference and apply an abuse-of-discretion standard of review. *See State v. Frazier*, 158 Ohio App.3d 407, 2004-Ohio-4506, 815 N.E.2d 1155, ¶ 15 (1st Dist.) (where a misdemeanor sentence is within the statutory limits, the trial court is presumed to have considered the required sentencing factors, absent a showing to the contrary by the defendant); *see also State v. Femuels*, 1st Dist. Hamilton No. C-190486, 2020-Ohio-2926, ¶ 34. An abuse of discretion means more than a mere error of law or judgment; it implies that the trial court's decision was unreasonable, arbitrary, or unconscionable. *Frazier* at ¶ 15.

{¶39} The burden of persuasion to demonstrate a mitigating factor in sentencing is on the defendant. *See State v. Rhodes*, 63 Ohio St.3d 613, 590 N.E.2d 261 (1992), syllabus; *State v. Duncan*, 154 Ohio App.3d 254, 2003-Ohio-4695, 796 N.E.2d 1006, ¶ 27 (1st Dist.). The standard is a preponderance of the evidence. *Rhodes* at syllabus.

{¶40} The trial court rejected Griffin's mitigation argument, stating,

With regards to your suggestion, this is really a minor misdemeanor. I'm really not moved on that. The arresting trooper, Allard, had no knowledge of whether or not your client was licensed or not, and any

attempt to impute any information from the other officers to this trooper, there's no evidence of that either. So based on that the finding is guilty.

{¶41} Griffin argues that the trial court abused its discretion in finding that there was no evidence presented to support his argument that the offense should be a minor misdemeanor. Griffin contends that even though Dotson did not arrive on the scene until after Griffin was placed in handcuffs, his general involvement in the stop and knowledge that Griffin had a CHL at the time of the previous stop proves the mitigating elements by a preponderance of the evidence.

{¶42} We agree that Griffin proved by a preponderance of the evidence that Dotson was "involved with the stop." However, Griffin did not prove that Dotson had "actual knowledge of [Griffin's] status as a licensee."

{¶43} First, simply because Griffin may have had a valid CHL nine months earlier, does not mean he still had a valid CHL at the time of the stop.

{¶44} Second, we must remember that the purpose of R.C. 2923.16(E)(1) is for officer safety. Thus, the timing of when an officer "involved with the stop" realizes, i.e., has "actual knowledge," that the offender has a valid CHL is important. Griffin was driving a car registered in his wife's name. Dotson ordered him to be pulled over for a tinted window violation. *See* R.C. 4513.241 (prohibiting the tinted glass from preventing a person from seeing inside of the car). There was no testimony presented that Dotson knew that Griffin was driving the car when he ordered the car to be pulled over. It was not until after Allard approached the vehicle and Griffin was in handcuffs that Dotson encountered Griffin and remembered their interaction nine months earlier. Thus, there was no evidence that Dotson could have

made Allard aware that Griffin had a valid CHL before Allard approached the vehicle and potentially put himself in danger.

{¶45}  Accordingly, we hold that the trial court did not abuse its discretion in holding that Griffin had failed to prove that R.C. 2923.16(I) was applicable. Griffin's second assignment of error is overruled.

### Third Assignment of Error

{¶46}  In his third assignment of error, Griffin argues that the trial court erred in forfeiting the two firearms.

{¶47}  R.C. 2981.04 permits the state to seek forfeiture of a defendant's property as part of a criminal sentence.  R.C. 2981.04(A) requires that the complaint contain a forfeiture specification, or if forfeiture is not reasonably foreseeable at the time the complaint is filed, that a forfeiture specification be provided in a Crim.R. 7(E) bill of particulars.  Forfeiture may also be pursued through a civil action under R.C. 2981.05.

{¶48}  The firearms were ordered forfeited as part of Griffin's criminal sentence.  Griffin argues that the state's failure to comply with R.C. 2981.04(A) renders the forfeitures improper.  The state agrees that it did not comply with R.C. 2981.04(A), and concedes that the trial court erred in forfeiting the Springfield.  But, the state argues that Griffin does not have standing to challenge the forfeiture of the Kel-Tek since he denied ownership of it.

{¶49}  The state did not raise the issue of standing before the trial court.  In a civil forfeiture action, standing is jurisdictional and may be raised at any time.  *In re $75,000.00 U.S. Currency*, 2017-Ohio-9158, 101 N.E.3d 1209, ¶ 45 (8th Dist.); *State*

*v. Langston*, 6th Dist. No. L-12-1014, 2012-Ohio-6249, ¶ 7. We hold that standing in a criminal forfeiture is also jurisdictional and may be raised at any time.

{**¶50**} Standing is "a party's right to make a legal claim or seek judicial enforcement of a duty or right." *In re $449 U.S. Currency,* 1st Dist. Hamilton No. C-110176, 2012-Ohio-1701, ¶ 24, quoting *Black's Law Dictionary* 1442 (8th Ed.2004). The party must have "some real interest in the subject matter of the action." *In re $449* at ¶ 24, quoting *State ex rel. Dallman v. Court of Common Pleas*, 35 Ohio St.2d 176, 298 N.E.2d 515 (1973), syllabus.

{**¶51**} Griffin testified that the Kel-Tek was not his, that he had found it in his car while he was cleaning one day, and then had forgotten that it was in there. He testified that he did not know where it came from, but offered, "I give people rides and stuff." Griffin cites *In re $449* for the proposition that he was not required to prove ownership of the Kel-Tek in order to challenge its forfeiture. Rather, his lawful possession of the Kel-Tek was sufficient. However, *In re $449* is distinguishable from this case.

{**¶52**} In *In re $449,* the defendant never denied having an interest in the vehicle subject to foreclosure. Rather, the defendant argued the opposite, that although the vehicle was not titled in his name at the time of forfeiture, the vehicle had been gifted to him. *In re $449* at ¶ 4.

{**¶53**} The present case is more analogous to *In re 1995 Mercedes C280*, 168 Ohio App.3d 48, 2006-Ohio-1565, 858 N.E.2d 823, ¶ 4 (1st Dist.), where the defendant denied any ownership interest in the vehicle subject to forfeiture. This court held that where a person is not the owner of property subject to forfeiture, the person lacks standing to challenge the forfeiture. *Id.* at ¶ 5. Multiple other districts

have likewise held that if a defendant claims no interest in the seized property or claims that another person is the true owner of the property, the defendant has no standing to contest or appeal the forfeiture. *See, e.g., State v. Langston*, 6th Dist. Lucas No. L–12–1014, 2012-Ohio-6249, ¶ 9 (listing cases from other districts).

{¶54} Because Griffin denied ownership of the Kel-Tek, he does not have standing to challenge the forfeiture of it. The third assignment of error is sustained as to the Springfield and overruled as to the Kel-Tek.

### *Fourth Assignment of Error*

{¶55} In his fourth assignment of error, Griffin argues that R.C. 2923.16(E)(1) is unconstitutionally vague and violates Article I, Section 16 of the Ohio Constitution, and the Due Process Clause in the Fourteenth Amendment to the United States Constitution.

{¶56} "Failure to raise at the trial court level the issue of the constitutionality of a statute or its application, which issue is apparent at the time of trial, constitutes a waiver of such issue and a deviation from this state's orderly procedure, and therefore need not be heard for the first time on appeal." *State v. Pleatman*, 1st Dist. Hamilton No. C-160234, 2016-Ohio-7659, ¶ 16, quoting *State v. Awan*, 22 Ohio St.3d 120, 489 N.E.2d 277 (1986), syllabus. An appellate court has discretion to review a constitutional challenge not raised before the trial court for plain error, but will not do so absent extraordinary reasons. *Pleatman* at ¶ 19.

{¶57} Griffin has failed to show that his circumstances are extraordinary and deserving of our review. His fourth assignment of error is waived.

### *Conclusion*

{¶58} Griffin's third assignment of error is sustained as to the Springfield firearm, but overruled as to the Kel-Tek firearm. All other assignments of error are overruled and the judgment of the trial court is affirmed in all other respects. The cause is remanded to the trial court with instructions to amend its forfeiture order and to order the Springfield firearm returned to Griffin.

Judgment affirmed in part, reversed in part, and cause remanded.

**MOCK, P.J.,** and **WINKLER, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.