[Cite as *State v. James*, 2022-Ohio-3019.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

STATE OF OHIO,                         :        APPEAL NO. C-210597
                                                TRIAL NO. 19CRB-29197
    Plaintiff-Appellee,            :
                                                *O P I N I O N.*
vs.                                    :

ANTOINE JAMES,                         :

    Defendant-Appellant.           :

Criminal Appeal From:  Hamiton County Municipal Court

Judgment Appealed From Is:  Affirmed in Part, Sentence Reversed in Part, and Cause Remanded

Date of Judgment Entry on Appeal: August 31, 2022

*Andrew W. Garth*, City Solicitor, *William T Horsley*, Chief Prosecuting Attorney, and *Connor E. Wood*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *Krista Gieske*, Assistant Public Defender, for Defendant-Appellant.

**MYERS, Presiding Judge.**

{¶1}　Defendant-appellant Antoine James appeals from the trial court's judgment convicting him of assault and sentencing him to a jail term to be served consecutively to a community-control sentence in another case, and ordering him to stay away from the victim of the assault. James challenges the weight of the evidence supporting his conviction and the sentence imposed by the trial court. We hold that the trial court erred in ordering James's jail sentence to be served consecutively to the five-year period of community control imposed in a separate case. It also erred in ordering James to stay away from the victim, since the stay-away order is a community-control sanction that cannot be imposed when the underlying sentence is a jail term and not a community-control sentence. We reverse the portions of the trial court's entry imposing consecutive sentences and a stay-away order and remand for resentencing, but otherwise affirm the trial court's judgment.

### *Factual and Procedural Background*

{¶2}　James was charged with assault in violation of R.C. 2903.13. The victim of the offense was Ceaira Brooks. At a bench trial, Ceaira testified that on November 30, 2019, she saw James "beating up on" her cousin Ardrella Brooks,[1] who was James's girlfriend, outside an after-hours party in downtown Cincinnati. Ceaira intervened and told James to stop hitting Ardrella. James then got in Ceaira's face. Ardrella pulled Ceaira away from James and got into Ceaira's car. Before Ceaira could join Ardrella in the car, James pressed up against her from behind and she pushed him away. Ceaira drove Ardrella home.

---

[1] We refer to Ceaira Brooks and Ardrella Brooks by their first names because they have the same surname.

{¶3} Ceaira testified that as she waited in the car for Ardrella to enter her home, she saw James approach Ardrella and attack her again. James then spit on Ceaira through her car window. According to Ceaira, she exited from the car to examine her clothing for spittle, and James hit her in the face with his fist. Ceaira testified that she fell to the ground, skinned her knee, scraped her hand, and broke her nails, and that she experienced pain for approximately one week. After getting up, Ceaira called the police. A photograph depicting the injuries to Ceaira's face, taken approximately a day and a half later, was admitted into evidence.

{¶4} James testified on his own behalf, providing a very different version of events than that offered by Ceaira. According to James, he encountered Ceaira outside the after-hours party when he was sending Ardrella home. He testified that he did not want Ardrella at the party because she was pregnant with his child. This angered Ceaira, who told him that he did not run Ardrella's life and could not tell her what to do. James denied ever touching or pressing against Ceaira outside the party, but stated that Ceaira had shoved him after he told Ardrella to go home. And he stated that Ceaira's sister, and not Ceaira, drove Ardrella home.

{¶5} James testified that when he arrived home after leaving the party, Ceaira and her boyfriend were waiting for him at his house. The two approached James and tried to fight him. According to James, Ceaira's boyfriend had a weapon, and Ceaira "start coming at me, hitting me, her dude, and I'm trying to fight her dude. She's fighting at me." James testified that he tried to get both Ardrella and Ceaira's brother to help him calm Ceaira down, and that Ceaira "busted" windows on his car and "jumped all on my back pulling my hair and stuff." He denied punching or spitting on Ceaira.

{¶6} The trial court found James guilty of assault. It sentenced him to 180 days in jail and ordered him to stay away from Ceaira. The trial court also ordered

James to serve the sentence consecutively to a community-control sentence that it had imposed in another case, in which it had found James guilty of aggravated menacing.

### *Manifest Weight*

{¶7}     In his first assignment of error, James argues that his assault conviction was against the manifest weight of the evidence.  When reviewing a challenge to the weight of the evidence, we must review the entire record, weigh the evidence, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice.  *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).

{¶8}     In order to find him guilty of assault, the trial court had to find that James knowingly caused or attempted to cause physical harm to Ceaira.  *See* R.C. 2903.13(A).

{¶9}     Ceaira testified that James spit on her and then punched her in the face, causing her to fall to the ground, skin her knee, scrape her hand, and break her nails. A photograph of the injuries to her face was admitted into evidence.  If believed, Ceaira's testimony was sufficient to establish the elements of assault.  *See* R.C. 2903.13(A).  James testified to a different version of events, one in which he denied striking Ceaira.  In finding James guilty, the trial court clearly believed the testimony offered by Ceaira and rejected James's testimony.  As the trier of fact, the trial court was in the best position to judge the credibility of the witnesses.  *See State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus; *State v. Shepard*, 1st Dist. Hamilton No. C-190747, 2021-Ohio-964, ¶ 62.  It was entitled to accept Ceaira's testimony and find her to be a credible witness.

{¶10}  James specifically argues that the trial court resorted to speculation to find him guilty, citing this court to the following statements made by the trial court:

And while I understand that there are two different versions of events, I think the photograph clearly shows the busted lip, the injury on the inside of the mouth, the fingers are in there.

You don't have to have pictures. Her testimony is very credible. But the one thing that stuck out in the story was when Mr. James testified that Ceaira busted his windows.

If Ceiara had busted his windows, he surely would have called the police and filed a police report.

So that makes no sense that she would have jumped him on his back, pulled his hair.

I don't—she appears to testify with fear and has fear for other people that she didn't want to identify. So it doesn't seem rational that she would jump his back and pull his hair.

The other thing he said is that her boyfriend got out and he was waving like in some way like he had a weapon.

Again, if someone has a weapon or you think someone has a weapon, you either run or you call the police, so Ceaira was more credible.

{¶11} James argues that these conclusions reached by the trial court constituted speculation that was not supported by the record. He asserts that the trial court could have instead determined that he failed to report the damage to his windows out of deference to Ceaira's and Ardrella's familial relationship and to avoid earning a reputation as a snitch. And he argues that instead of determining that James lied about Ceaira's boyfriend having a weapon, the trial court could have instead determined that Ceaira's boyfriend did, in fact, have a weapon, but that James's reaction was to freeze, rather than run.

{¶12} We are not persuaded by James's arguments and do not believe that the trial court resorted to speculation to find him guilty. The trial court was entitled to

make reasonable inferences based on the evidence presented, and its statements reflect its determination that Ceaira was the more credible witness. It was entitled to question James's testimony. Ultimately, this case came down to whether the trial court believed Ceaira or James. The court believed Ceaira, whose testimony was supported by the photograph of the injuries to her face. This was not the rare case in which the trial court lost its way and committed a manifest miscarriage of justice in convicting James. *See Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541.

**{¶13}** We hold that James's conviction was supported by the weight of the evidence, and we overrule the first assignment of error.

*Sentencing*

**{¶14}** In both his second and third assignments of error, James challenges the sentence imposed. In his second assignment of error, James argues that the trial court erred in ordering him to serve a 180-day jail term and in ordering that term to be served consecutively to a community-control sentence imposed in another case. The state concedes that the trial court erred in ordering the sentence to be served consecutively, but asks us to uphold the imposition of the 180-day jail term.

**{¶15}** We review the imposition of a misdemeanor sentence for an abuse of discretion. *State v. Griffin*, 2020-Ohio-3707, 155 N.E.3d 1028, ¶ 38 (1st Dist.). An abuse of discretion connotes more than an error of law or judgment, and it implies that the trial court's judgment was unreasonable, arbitrary, or unconscionable. *Id.* "Where the trial court imposes a misdemeanor sentence within the statutory range for the offense, we presume that the trial court considered the appropriate misdemeanor-sentencing considerations set forth in R.C. 2929.21 and 2929.22." *State v. Brown*, 1st Dist. Hamilton No. C-140509, 2015-Ohio-2960, ¶ 10.

### 1. 180-Day Sentence

{¶16} R.C. 2929.21(A) provides that a trial court imposing a sentence for a misdemeanor offense shall be guided by the overriding purposes of misdemeanor sentencing—to protect the public from future crime by the offender and to punish the offender. In fashioning a sentence that achieves these purposes, the court shall consider "the impact of the offense upon the victim and the need for changing the offender's behavior, rehabilitating the offender, and making restitution to the victim of the offense, the public, or the victim and the public." *Id.* R.C. 2929.22 contains various factors and considerations for the trial court to take into account when determining an appropriate sentence for a misdemeanor offense.

{¶17} At the sentencing hearing, the trial court imposed a sentence on James's conviction for assault, as well as on two other unrelated offenses that James had been convicted of in separate trials. For the assault offense in this case, the trial court imposed a sentence of 180 days, which is within the range for a first-degree misdemeanor set forth in R.C. 2929.24(A)(1). We therefore presume that the trial court considered the misdemeanor-sentencing considerations set forth in R.C. 2929.21 and 2929.22. *See Brown* at ¶ 10.

{¶18} At sentencing, the trial court stated that it could not minimize the fear felt by the victims of James's offenses. The court additionally stated that a period of jail time would give James a "timeout" to take stock of his life, and that the court was not acting punitively, but rather was attempting to balance the nature of the crimes with a punishment that would give James a chance to take a break in his life. On this record, we find no abuse of discretion by the trial court in imposing a sentence of 180 days.

### 2.  *Imposition of Consecutive Sentences*

**{¶19}**  James next argues that the trial court erred in ordering the 180-day sentence for assault to be served consecutively to the sentence of five years of community control imposed in a separate case.  The state concedes that this was error.

**{¶20}**  R.C. 2929.41 governs the imposition of multiple sentences. Subdivision (A) of this section provides in relevant part that:

> Except as provided in division (B) of this section, division (C) of section 2929.14, or division (D) or (E) of section 2971.03 of the Revised Code, a prison term, jail term, or sentence of imprisonment shall be served concurrently with any other prison term, jail term, or sentence of imprisonment imposed by a court of this state, another state, or the United States.

And R.C. 2929.41(B)(1) provides that:

> A jail term or sentence of imprisonment for a misdemeanor shall be served consecutively to any other prison term, jail term, or sentence of imprisonment when the trial court specifies that it is to be served consecutively or when it is imposed for a misdemeanor violation of section 2907.322, 2921.34, or 2923.131 of the Revised Code.
>
> When consecutive sentences are imposed for misdemeanor under this division, the term to be served is the aggregate of the consecutive terms imposed, except that the aggregate term to be served shall not exceed eighteen months.

**{¶21}**  In *State v. Hitchcock*, 157 Ohio St.3d 215, 2019-Ohio-3246, 134 N.E.3d 164, ¶ 25, the Supreme Court of Ohio held that unless authorized by statute, a trial court may not order a jail term on one felony count to be served consecutively to a period of community control on another felony count.  The court recognized that "the

general principle set forth in the Revised Code is that concurrent sentences are the default and consecutive sentences are the exception," noting the provision in R.C. 2929.41(A), set forth above, that "prison terms, jail terms, and sentences of imprisonment 'shall be served concurrently' unless a statutory exception provides otherwise." *Id.* at ¶ 21. The *Hitchcock* court stated that:

> It is also true that the Revised Code does not *prohibit* trial courts from imposing community-control sanctions on one felony to be served consecutively to a prison term imposed on another felony. But this does not mean that trial courts are *authorized* to impose such consecutive terms. Absent express statutory authorization for a trial court to impose the increased penalty of consecutive sentences, the trial court must follow the default rule of running the sentences concurrently.

*Id.* at ¶ 23.

{¶22} While *Hitchcock* concerned felony offenses, this case concerns the imposition of a jail term and a period of community control for misdemeanor offenses ordered to be served consecutively. The legal conclusion reached by the *Hitchcock* court nonetheless remains applicable. Unless authorized by statute, the trial court may not impose community-control sanctions on one misdemeanor count to be served consecutively to a jail term imposed on another misdemeanor count. *See id.* at ¶ 25. As in *Hitchcock*, none of the statutory exceptions set forth in R.C. 2929.41(A) apply to authorize the imposition of consecutive sentences in this case. *See id.* at ¶ 12.

{¶23} Because no statute authorized the trial court to impose a sentence of community control consecutive to the imposition of a jail term, we hold that the trial court erred in imposing consecutive sentences in this case. James's second assignment of error is accordingly sustained in part and overruled in part.

9

### *3. Stay-Away Order*

**{¶24}** In his third assignment of error, James argues that the trial court erred in ordering him to stay away from Ceaira as part of his jail sentence. The state concedes that this was error.

**{¶25}** A no-contact or stay-away order is a community-control sanction. *State v. Anderson*, 143 Ohio St.3d 173, 2015-Ohio-2089, 35 N.E.3d 512, ¶ 17; *State v. Beauchamp*, 1st Dist. Hamilton No. C-210340, 2022-Ohio-738, ¶ 17. A trial court is authorized to impose either a prison or jail term, or community control for a particular offense. *Anderson* at ¶ 31; *Beauchamp* at ¶ 17. Here, because the trial court imposed a jail term, it was not authorized to impose a community-control sanction. *Anderson* at ¶ 32; *Beauchamp* at ¶ 17. The trial court therefore erred in ordering James to stay away from Ceaira. The third assignment of error is sustained.

### *Conclusion*

**{¶26}** We affirm the trial court's judgment finding James guilty of assault and imposing a 180-day jail term. But we reverse the portion of the trial court's entry ordering James to stay away from Ceaira and ordering the jail term to be served consecutively to a sentence of community control imposed in another case. This case is remanded for resentencing consistent with the law and this opinion.

Judgment accordingly.

**ZAYAS** and **BOCK, JJ.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.