[Cite as *In re N.S.*, 2022-Ohio-3988.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

IN RE: N.S. AND C.S.

:

APPEAL NO. C-220066
TRIAL NO. F15-2432X

:

*O P I N I O N.*

Appeal From: Hamilton County Juvenile Court

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: November 9, 2022

*Bailey Law Office, LLC*, and *Donyetta D. Bailey*, for Appellant father,

*Victor Dwayne Sims*, for Appellee grandfather.

**MYERS, Presiding Judge.**

{¶1} Father appeals from the trial court's judgment awarding companionship time of his children, N.S. and C.S. to grandfather. In three assignments of error, father argues that the trial court failed to give special weight to father's wishes regarding visitation with grandfather, wrongfully placed the burden of proof on father to establish that visitation with grandfather was not in the children's best interest, and abused its discretion in ultimately determining that visitation with grandfather was in the children's best interest.

{¶2} While we understand father's position, our review of the record reveals no abuse of discretion on the part of the trial court. We therefore find father's assignments of error to be without merit and affirm the trial court's judgment.

### *Factual and Procedural Background*

{¶3} At the start of this litigation, father had legal custody of N.S. and C.S. Grandfather (father's father) filed a request for an emergency hearing and a petition for custody of N.S. and C.S. on December 23, 2020. In a supporting affidavit, grandfather alleged that the children were in imminent danger due to constant physical and mental abuse by father. Following a hearing, a juvenile court magistrate denied grandfather's motion for an emergency order of custody because the testimony presented established that the most recent alleged physical abuse that left any mark on the children occurred more than nine months earlier, and the court could not make a finding of imminent risk of harm without a recent event of serious harm to the children. The order further provided that no one was allowed to use physical discipline on the children pending further order of the court.

{¶4} On January 7, 2021, grandfather filed another request for an emergency order of custody. In a supporting affidavit, grandfather alleged that approximately a week earlier, on New Year's Eve, father had choked N.S. by lifting her off the floor by her neck. The magistrate issued an order granting emergency custody to grandfather after finding that testimony at a hearing established that father had used corporal punishment in contravention of the magistrate's previous order. The matter was set for a subsequent hearing on January 13, 2021. Father did not appear on that date, and the magistrate continued the emergency grant of interim custody to grandfather.

{¶5} On January 14, 2021, father filed a petition for custody of N.S. and C.S. and a request for an emergency hearing, alleging that the children's basic needs were not being met under grandfather's care and that they wanted to return home. Following a hearing, the magistrate denied father's motion.

{¶6} Father then filed a motion to set aside the magistrate's order granting interim custody to grandfather, arguing that he had been unable to join the remote hearing on grandfather's motion and present his case. The trial court granted father's motion to set aside the magistrate's order, finding that father was erroneously notified of a remote hearing, when the hearing had been held in person, and it remanded the case for a new hearing. On remand, the magistrate issued an order denying grandfather's motion for an emergency order of interim custody and ordered that the children be returned to father.

{¶7} Grandfather modified his motion for custody of N.S. and C.S. to a motion for visitation with the children. At a hearing on his motion, grandfather testified that he had an excellent relationship with his grandchildren. He explained

that he often watched them after school, from the time that they got off the school bus until late in the evening.

{¶8} Grandfather testified that he had concerns about father abusing the children. He stated that after N.S. told him that father had "whooped" her with a belt and left a mark on her skin, he told father that father had crossed a line and that "I didn't say he couldn't whoop them. I said he couldn't break—breaking their skin and putting welts on them was over the line." Grandfather identified several pictures depicting various injuries to N.S. that he stated resulted from discipline by father, including a cut on N.S.'s thigh that occurred when she was "whooped" and an injury to her mouth and lip incurred when father smacked her. According to grandfather, these injuries occurred over a period of time from September of 2017 to October of 2020. During this period of time, grandfather never contacted authorities about his concerns with father's treatment of the children, but rather attempted to resolve his concerns "in house." Grandfather also spoke to Denise Shamel, father's mother, about his concerns. He and Shamel planned for Shamel to tell father that if father ever felt like he needed to "whoop" the children, he should take them to Shamel's and leave them with her.

{¶9} Father testified and addressed grandfather's allegations that he had caused the injuries to N.S. depicted in the photographs. He denied the allegations, explaining that one of the depicted injuries was caused when N.S. got into a "scuffle" with another girl, and that N.S. suffered another injury when she was punched in the mouth while being bullied on the school bus. Father also denied grandfather's allegations that he had caused injury to N.S. on New Year's Eve. He stated that he

believed grandfather fabricated those allegations as retribution for him telling grandfather that he was no longer welcome in father's life.

{¶10}  Father testified that while he had previously used corporal punishment on his children, he did not currently do so, and that he had not physically disciplined them in the past several years.  And he stated that grandfather had never approached him with grandfather's concerns about his treatment of the children.

{¶11}  Father stated that he was opposed to grandfather being granted visitation with N.S. and C.S.  He told the court that the children were traumatized following the court's temporary grant of emergency custody to grandfather.  Their grades fell during that period, they were not as happy, and they were withdrawn. Father testified that when the children were returned to his care, father enrolled them in therapy, and that their grades and mental health have since improved.

{¶12}  Father's testimony corroborated that offered by grandfather concerning the time that grandfather spent with the children after school and in the evenings. Father explained that he no longer works such long hours and is able to do more for the children himself.

{¶13}  Father also presented testimony from his sister Abiona Jamison and his mother Denise Shamel.  Both testified that they spent New Year's Eve with father and the children, and that they did not see father discipline N.S. or C.S.  Jamison elaborated that she had never seen any signs of abuse on the children, and that neither child had ever told her that their father abused them.  Shamel likewise testified that she had never seen father abuse the children and that the children had never reported abuse by father.  She acknowledged that grandfather had conveyed to her his concern

that father was too rough with the children, but stated that she did not share grandfather's concerns.

{¶14} Shamel testified that grandfather is not a truthful person, and that she felt that he disrespects her in front the children. Both father's brother, Devante Shamel, and father's girlfriend, Konta Perkins, also testified that grandfather is not a truthful person and that they had never seen father abuse the children.

{¶15} In addition to the testimony presented, the magistrate conducted an in camera interview with N.S. The magistrate issued a decision denying grandfather's request for visitation. The decision stated that, after conducting the in camera interview, the magistrate did not believe that grandfather's allegations were meritorious and that father's explanations of the children's injuries were accurate. The magistrate considered the relevant statutory factors before determining that visitation with grandfather was not in the children's best interest. The decision provided that:

> [T]he court has grave concerns about allowing grandfather to have
> visitation with the children. His motivation for documenting marks on
> the children does not appear to be what he stated. The court does not
> believe that the children would have reported abuse to grandfather but
> not reported it to anyone else. They simply do not appear to have had
> that kind of close relationship. This is further buttressed by the fact that
> no one else ever observed any concerning behavior from father or the
> children that would have indicated abuse.

{¶16} Grandfather filed objections to the magistrate's decision, arguing that the magistrate's findings were contrary to the testimony and to the manifest weight of the evidence, and that the decision was not in the children's best interest. Transcripts

were not filed, but to facilitate its review of the objections, the trial court reviewed the audio-visual record of the proceedings. The trial court found grandfather's objections to be well taken, stating that the magistrate did not properly determine the factual issues or appropriately apply the law. It indicated that the hearing before the magistrate had focused on whether father had abused the children, when the actual focus of the hearing should have been on whether visitation with grandfather was in the children's best interest. Because of this misguided focus, the court found, the magistrate allowed his disbelief that abuse had occurred to color his interpretation of the testimony.

{¶17} The trial court did not find father's witnesses to be credible, stating that "[f]ather's witnesses claimed to be regularly involved with the children, some even on a daily basis, but denied any knowledge of ever seeing any injuries on the children or hearing about the children having issues with other children" and that "there appeared to be personal issues at play regarding the nature of the witnesses' relationship with Grandfather that made their testimony additionally questionable." The court further found that father's description of the children's relationship with grandfather lacked credibility, stating that "Grandfather has a long-standing relationship with these children and was involved in their daily care until the very recent past when the relationship between Grandfather and Father became strained."

{¶18} The trial court considered the relevant statutory best-interest factors and determined that visitation or companionship time with grandfather was in the children's best interest. The court accordingly set aside the magistrate's decision, granted grandfather's motion for visitation, and denied father's pending motion for custody because father already held legal custody of the children.

**{¶19}** Father now appeals.

### *Grandparent Visitation*

**{¶20}** In three related assignments of error, father challenges the trial court's entry granting visitation to grandfather. Before addressing father's arguments, a discussion of the statutes governing grandparent visitation is instructive.

**{¶21}** R.C. 3109.12, applicable in this case, provides that if a child is born to an unmarried woman, the father of the child has acknowledged paternity, and that acknowledgement has become final or officially determined, then "the parents of the father and any relative of the father may file a complaint requesting that the court grant them reasonable companionship or visitation rights with the child." R.C. 3109.12(A). The trial court may grant a grandparent companionship or visitation rights if it determines that doing so is in the best interest of the child. R.C. 3109.12(B). In determining whether visitation with a grandparent is in a child's best interest, "the court shall consider all relevant factors, including, but not limited to, the factors set forth in division (D) of section 3109.051 of the Revised Code." *Id.*

**{¶22}** The best-interest factors set forth in R.C. 3109.051(D) are as follows:[1]

(1) The prior interaction and interrelationships of the child with * * * the

person who requested companionship or visitation if that person is not

a parent, sibling, or relative of the child;

(2) The geographical location of the residence of each parent and the

distance between those residences, and if the person is not a parent, the

---

[1] The factors set forth in R.C. 3109.051(D)(11), (13), and (14) are not relevant in this appeal, as they solely concern the child's parents, and not a family member seeking visitation.

geographical location of that person's residence and the distance between that person's residence and the child's residence;

(3) The child's and parents' available time, including, but not limited to, each parent's employment schedule, the child's school schedule, and the child's and the parents' holiday and vacation schedule;

(4) The age of the child;

(5) The child's adjustment to home, school, and community;

(6) If the court has interviewed the child in chambers, pursuant to division (C) of this section, * * * the wishes and concerns of the child, as expressed to the court;

(7) The health and safety of the child;

(8) The amount of time that will be available for the child to spend with siblings;

(9) The mental and physical health of all parties;

(10) Each parent's willingness to reschedule missed parenting time and to facilitate the other parent's parenting time rights, and with respect to a person who requested companionship or visitation, the willingness of that person to reschedule missed visitation;

* * *

(12) In relation to requested companionship or visitation by a person other than a parent, whether the person previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether the person, in a case in which a child has been adjudicated an abused

9

child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of the adjudication; * * * and whether there is reason to believe that the person has acted in a manner resulting in a child being an abused child or a neglected child;

* * *

(15) In relation to requested companionship or visitation by a person other than a parent, the wishes and concerns of the child's parents, as expressed by them to the court;

(16) Any other factor in the best interest of the child.

### 1. Standard of Review

{¶23} We review a trial court's decision to grant a nonparent's motion for companionship or visitation time for an abuse of discretion. *In re Flynn*, 10th Dist. Franklin No. 20AP-506, 2021-Ohio-4456, ¶ 15; *In re A.B.*, 12th Dist. Butler No. CA2015-06-104, 2016-Ohio-2891, ¶ 39. An abuse of discretion indicates "more than a mere error of law or judgment; it implies that the trial court's decision was unreasonable, arbitrary, or unconscionable." *State v. Griffin*, 2020-Ohio-3707, 155 N.E.3d 1028, ¶ 38 (1st Dist.).

### 2. Father's Wishes

{¶24} In his first assignment of error, father argues that the trial court erred and abused its discretion by failing to give special weight to father's wishes when determining whether to grant visitation to grandfather. Father's argument concerns the best-interest factor set forth in R.C. 3109.051(D)(15), which, as set forth above,

provides that the trial court should consider "the wishes and concerns of the child's parents, as expressed by them to the court."

**{¶25}** A parent has a fundamental right to make decisions that concern the care, custody, and control of her or his own child. *Harrold v. Collier*, 107 Ohio St.3d 44, 2005-Ohio-5334, 836 N.E.2d 1165, ¶ 40; *In re E.T.B.*, 12th Dist. Clermont No. CA2014-07-051, 2015-Ohio-2991, ¶ 27. Grandparents, on the other hand, "have no constitutional right of association with their grandchildren" and are only entitled to be granted visitation rights as provided for by statute. *In re E.T.B.* at ¶ 27. Because fit parents possess this fundamental right concerning the care of their children, the preferences of a fit parent regarding visitation should be accorded great deference. *In re E.T.B.* at ¶ 30.

**{¶26}** As such, to protect a parent's due-process rights, a trial court must give special weight to R.C. 3109.051(D)(15) when making a visitation determination. *Collier* at ¶ 42; *Estep v. Celek*, 1st Dist. Hamilton No. C-081117, 2009-Ohio-4990, ¶ 9. However, a parent's wishes should not be placed before the best interest of the child, and the parent's wishes are not "the sole determinant of the child's best interest." *Collier* at ¶ 44; *Estep* at ¶ 9. Rather, "the trial court must take into consideration the 15 other factors set forth in R.C. 3109.051(D) and balance those factors against the parent's desires to determine the child's best interest." *Estep* at ¶ 9; *see Collier* at ¶ 43.

**{¶27}** While trial courts must accord special weight to a parent's wishes, neither the applicable statutes or the relevant case law define what exactly constitutes "special weight." In *Estep*, this court discussed the trial court's obligation to accord special weight to a parent's wishes, stating:

a trial court is not required to find 'overwhelmingly clear circumstances' before ordering visitation for the benefit of the child over the opposition of the parent. Instead, because a parent's wishes are to be given some special weight, those wishes must be weighed against the other factors under R.C. 3109.051(D) bearing upon whether it is in the best interest of the child to grant non-parental visitation. And the manner in which this standard is to be applied to each case must be 'elaborated with care.' Thus, there must be some meaningful rationale given for either abiding by or overriding the wishes of the parent.

*Estep* at ¶ 10, quoting *Collier* at ¶ 46, and *Troxel v. Granville*, 530 U.S. 57, 73, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000). Several of our sister districts have interpreted the phrase "special weight" to mean "extreme deference." *Boling v. Thacker*, 2d Dist. Clark No. 2018-CA-109, 2019-Ohio-3683, ¶ 16; *Ford v. Frazier*, 4th Dist. Hocking No. 02CA8, 2003-Ohio-1087, ¶ 28; *Oliver v. Feldner*, 149 Ohio App.3d 114, 2002-Ohio-3209, 776 N.E.2d 499, ¶ 61 (7th Dist.); *In re N.C.W.*, 2014-Ohio-3381, 17 N.E.3d 119, ¶ 21 (12th Dist.). And one district has recognized that while a trial court must accord special weight to a parent's wishes, the court is not required to use the words "special weight" in a decision determining visitation. *Williams v. McGuire*, 9th Dist. Lorain No. 21CA011784, 2022-Ohio-3598, ¶ 5.

{¶28} Some additional guidance as to the meaning of the phrase "special weight" can also be found in *Collier*, in which the Supreme Court of Ohio considered whether a trial court had given special weight to a father's wishes that his child not have visitation with grandparents. *Collier*, 107 Ohio St.3d 44, 2005-Ohio-5334, 836 N.E.2d 1165. When evaluating the trial court's decision, the *Collier* court held that:

The court ultimately decided that [child's] best interests in maintaining her relationship with appellees outweighed appellant's desire for no visitation. While the trial court did not use the words 'special weight,' it is clear that the court gave due deference to appellant's wishes and concerns regarding visitation before determining that it was in [child's] best interest to grant appellees' motion for grandparent visitation.

*Id.* at ¶ 45.

**{¶29}** Here, the trial court considered father's wishes that grandfather not be granted visitation with the children. When doing so, the court noted that father had concerns that grandfather would fabricate additional allegations of physical abuse by father if he was granted access to the children. The court ultimately did not find father's concerns to be credible, stating that "The history of the case and evidence presented does not demonstrate that Grandfather was responsible for the fabrication of allegations or that the allegations were false. Father's own testimony indicated that he believes in and utilizes corporal punishment. Grandfather presented photographic evidence of the child's injuries." Also impacting its assessment of father's wishes was the court's disbelief of father's description of the relationship between grandfather and the children. On this point, the court stated:

While the Magistrate discounted the nature of the children's relationship with Grandfather, as described by Grandfather, to not be credible based on their interpretation that the abuse allegations were not credible, the Court disagrees. Here, Grandfather described his daily routine with the children, including his daily involvement in their school transportation and transportation to their Grandmother's home, and

13

the long-lasting nature of their relationship generally, including regular overnight visits and weekly dinners. Father did not deny this relationship and arrangement existed but rather attempted to diminish Grandfather's role just as somewhat of a taxi service.

**{¶30}** We are mindful of a fit parent's fundamental right to make decisions that concern the care, custody, and control of her or his child. We recognize that generally, a parent has the right to choose people with whom her or his child associates, even as to visitation with close relatives. And courts must give the parents' wishes due deference when considering the best interest of the child. Nonetheless, in this case, the trial court made a specific credibility finding regarding father. That credibility determination, which we will not second guess, impacted the court's assessment of father's proffered reasons for not wanting grandfather to be allowed visitation with N.S. and C.S. The court simply did not believe father when he testified that the children's grades suffered and that they required therapy as a result of visitation with grandfather. Nonetheless, the court was still required to give the father's wishes special consideration.

**{¶31}** The record establishes that the court accorded father's wishes due deference and provided a meaningful rationale for overriding them. *See Estep*, 1st Dist. Hamilton No. C-081117, 2009-Ohio-4990, at ¶ 10. In addition to considering father's wishes, the trial court considered the other factors in R.C. 3109.051(D). After considering and weighing all factors, the court determined that granting visitation to grandfather was in the children's best interest. While the court's determination was in contravention to father's wishes, that does not mean that the court failed to give due deference or special weight to those wishes.

14

**{¶32}** Because the record demonstrates that the trial court did not fail to give special weight to father's wishes, we find that the trial court did not err or abuse its discretion and we overrule the first assignment of error.

### 3. Burden of Proof

**{¶33}** In his second assignment of error, father argues that the trial court erred and abused its discretion by placing the burden of proof on father to establish that visitation with grandfather was not in the children's best interest.

**{¶34}** In support of his argument, father directs us to two specific statements by the trial court. First, father takes issue with the trial court's response to father's testimony that the children are in therapy as a result of their removal from his home. In addressing father's testimony, the trial court stated:

> Father produced no evidence of the children being in therapy, or, if so, the source of their alleged trauma or therapeutic treatment plans. While the Court has not been presented with sufficient evidence to demonstrate that the children's mental health has been effected [sic] by their prior removal from Father's home, the Court does not doubt that the rift in the relationship between Grandfather and Father has caused turmoil for these children, given the nature of their past relationship as a family.

**{¶35}** Father also directs us to the trial court's treatment of his testimony that the children's schoolwork suffered while they were in grandfather's care. In considering the factor in R.C. 3109.051(D)(5) pertaining to the children's adjustment to home, school, and community, the court stated:

Father claims that the children did not do well in school for a period due to their removal from his home. However, no evidence was presented to indicate the accuracy of this claim or the extent and timeliness of any maladjustment. Furthermore, Father reports that the children are presently doing well. No evidence was presented that would indicate that the children are not well-adjusted to each home environment or related community.

**{¶36}** Father is correct in his assertion that grandfather bore the burden of proof to establish that visitation with grandfather was in the children's best interest. *Collier*, 107 Ohio St.3d 44, 2005-Ohio-5334, 836 N.E.2d 1165, at ¶ 45. But we do not agree with father's contention that the trial court's statements, as quoted above, reflect that the trial court switched the burden of proof to father to establish that visitation with grandfather was not in the children's best interest.

**{¶37}** Father is also correct in arguing that the trial court's statements that he provided "no evidence" were incorrect. Father's testimony on these issues is evidence. Rather, we interpret the trial court to be saying that there was no corroborating evidence presented.

**{¶38}** In response to father's argument, we first note that these two comments by the trial court are two isolated comments taken from the trial court's multiple-page entry. Outside of these comments, the record contains no indication that the trial court, when weighing the relevant factors and considering the evidence presented, placed the burden of proof on father. Second, in our view, the trial court's comments reflect the court's credibility determination regarding father, rather than a switching of the burden of proof. It is clear from the trial court's entry that the court did not find

father to be a credible witness. The court stated that it "does not find Father's description of the children's relationship with Grandfather to be credible" and that it believed that when describing grandfather's relationship with the children, father "attempted to diminish Grandfather's role just as somewhat of a taxi service."

{¶39} The statements that father takes issue with illustrate the credibility, or lack thereof, that the trial court accorded to father's testimony. The court considered father's superficial or base testimony that the children needed therapy following their time in grandfather's care and that their grades suffered while in his care. Given its assessment of father's credibility, the court looked for other evidence in the record to corroborate father's assertions.

{¶40} We hold that the trial court did not err or abuse its discretion by erroneously placing the burden of proof on father, and we overrule the second assignment of error.

### 4. Best-Interest Determination

{¶41} In his third assignment of error, father argues that the trial court erred and abused its discretion by finding that grandparent visitation was in the best interest of the children because the court's factual findings were against the manifest weight of the evidence.

{¶42} In determining whether visitation with grandfather was in the children's best interest, the trial court considered the factors set forth in R.C. 3109.051(D). Father takes issue with the trial court's findings in support of these factors and argues that the court discounted the testimony offered by father's witnesses. For example, father argues that the trial court ignored the testimony from multiple witnesses that grandfather has a propensity to lie and that it ignored the

testimony from Denise Shamel regarding grandfather's treatment of her in front of the children and his treatment of the children themselves.

{¶43} The trial court's consideration of the witnesses' testimony reflects the credibility that the court accorded that testimony. In addition to finding that father lacked credibility, the trial court found the testimony offered by father's witnesses to also be lacking in credibility. The court stated:

> Father's witnesses claimed to be regularly involved with the children, some even on a daily basis, but denied any knowledge of ever seeing any injuries on the children or hearing about the children having issues with other children. Furthermore, there appeared to be personal issues at play regarding the nature of the witnesses' relationship with Grandfather that made their testimony additionally questionable.

{¶44} Other statements by the trial court reflect its determination that grandfather was a credible witness. The court made the following statements concerning grandfather's credibility:

> The history of the case and evidence presented does not demonstrate that Grandfather was responsible for the fabrication of allegations or that the allegations were false. Father's own testimony indicated that he believes in and utilizes corporal punishment. Grandfather presented photographic evidence of the child's injuries. The Court's record indicates prior receipt of audio recordings of the child disclosing abuse, which the Court had found sufficient to grant Interim Custody to Grandfather on an emergency basis.

*   *   *

18

While the Magistrate discounted the nature of the children's relationship with Grandfather, as described by Grandfather, to not be credible based on their interpretation that the abuse allegations were not credible, the Court disagrees.

**{¶45}** The trial court, which viewed the audio-visual recordings of the proceedings, was in the best position to judge the credibility of the witnesses and we will not second guess its determinations. *See State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus; *State v. Shepard*, 1st Dist. Hamilton No. C-190747, 2021-Ohio-964, ¶ 62.

**{¶46}** The trial engaged in a thorough and detailed best-interest determination. Although this court, under a de novo review, may have reached a different conclusion, the trial court's decision was not unreasonable, arbitrary, or unconscionable.

**{¶47}** Because the trial court did not abuse its discretion in determining that a grant of visitation to grandfather was in the children's best interest, the third assignment of error is overruled. The judgment of the trial court is accordingly affirmed.

Judgment affirmed.

**BERGERON** and **CROUSE, JJ.,** concur**.**

Please note:
The court has recorded its own entry on the date of the release of this opinion.