**[Cite as *State v. Nicholson*, 2022-Ohio-4598.]**

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NOS. C-220076 |
| | | C-220077 |
| Plaintiff-Appellee, | : | TRIAL NOS. 21CRB-22360A |
| | | 22CRB-785 |
| vs. | : | |
| JOSHUA NICHOLSON, | : | *O P I N I O N.* |
| Defendant-Appellant. | : | |


Criminal Appeals From:  Hamilton County Municipal Court

Judgments Appealed From Are:  Affirmed in Part, Sentences Reversed in Part, and
          Cause Remanded

Date of Judgment Entry on Appeal: December 21, 2022


*Emily Smart Woerner*, City Solicitor, *William T. Horsley*, Chief Prosecuting Attorney,
and *Rebecca Barnett*, Assistant City Prosecutor, for Plaintiff-Appellee*,*

*Raymond T. Faller,* Hamilton County Public Defender, and *Sarah E. Nelson*, Assistant
Public Defender, for Defendant-Appellant.

**MYERS, Presiding Judge.**

{¶1}   Defendant-appellant Joshua Nicholson was convicted of two counts of criminal damaging that stemmed from his slashing tires on two different vehicles, including a company truck and a woman's car.  The trial court sentenced Nicholson to consecutive 90-day jail terms and ordered that he pay restitution to the victims.

{¶2}   On appeal, Nicholson challenges the trial court's denial of his motion to dismiss on speedy-trial grounds, the weight and sufficiency of the evidence supporting his convictions, and the trial court's order that he pay restitution.  Finding that no speedy-trial violation occurred, and that Nicholson's convictions were supported by the evidence, we affirm his convictions.  However, as the state concedes, the trial court erred by failing to hold a restitution hearing where the amount of restitution was in dispute.  Therefore, we reverse the trial court's order as to the amount of restitution, and we remand this matter to the trial court to hold an evidentiary hearing on restitution.

## Speedy Trial

{¶3}   In his first assignment of error, Nicholson argues that the trial court erred by denying his motion to dismiss the criminal-damaging charge related to the company truck.  He asserts that the state's delay in trying him on that charge violated his right to a speedy trial.

{¶4}   When Nicholson was first arrested, he was charged with felony vandalism for damaging the company truck, along with two other misdemeanor charges unrelated to that truck.  Bond was set at $75,000 on the felony charge and at $2,500 on each of the misdemeanor charges, and the cases were continued to await the report of the grand jury.  The grand jury ignored the felony charge, but Nicholson remained jailed on the misdemeanors.

{¶5}   Then, while Nicholson was in jail, the police filed a second felony vandalism charge for the same damage to the company truck and served him with the

2

felony complaint. He received a recognizance bond on the new felony charge, and, although the prosecutor soon dismissed the new felony charge, he remained in jail on the misdemeanors.

{¶6} While Nicholson was still jailed on the misdemeanors, the police filed yet another charge against Nicholson for the same damage to the company truck, this time charging him with criminal damaging, a second-degree misdemeanor. Because Nicholson had been in jail since his arrest on December 22, 2021, he filed a motion to dismiss the misdemeanor charge related to the company truck, arguing that he had been held beyond the speedy-trial time allowed for a person jailed on a second-degree misdemeanor. He now argues that the trial court erred by denying the motion.

{¶7} To answer this question, we must look to R.C. 2945.71, which codifies the constitutional right to a speedy trial. Generally, a person charged with a felony must be brought to trial within 270 days after arrest, and a person charged with a second-degree misdemeanor must be brought to trial within 90 days. R.C. 2945.71(B)(2) and (C)(2). In computing time, each day during which the person is held in jail in lieu of bail on the pending charge is counted as three days. R.C. 2945.71(E). So a person held in jail on a pending felony charge must be tried within 90 days, and a person held in jail on a pending second-degree misdemeanor charge must be tried within 30 days (assuming the person is held in jail on the pending charge the entire time).

{¶8} In this case, we must determine which speedy-trial period applies by comparing the speedy-trial periods for the original felony charge and the later-filed misdemeanor charge arising from the same damage to the company truck. Ohio courts considering this question have held that when an original charge is later reduced to a lesser offense based upon the same conduct, the speedy-trial limitations in R.C. 2945.71 begin to run anew on the date the defendant is served with the charge on the lesser offense. *See Cleveland v. Gross*, 8th Dist. Cuyahoga No. 110669, 2022-Ohio-193, ¶ 20 (original felony child-endangering charge was dismissed and a reduced

3

charge of misdemeanor child-endangering based upon the same conduct was later filed); *State v. Sitko*, 11th Dist. Trumbull No. 2020-T-0016, 2021-Ohio-788, ¶ 46 (felony OVI charge was reduced by grand jury indictment to two misdemeanor OVI charges); *State v. Holmes*, 5th Dist. Stark No. 2016 CA 00137, 2017-Ohio-4078, ¶ 21 (felony robbery charge was reduced by grand jury indictment to misdemeanor theft); *State v. Smith*, 4th Dist. Athens No. 99CA31, 2000 Ohio App. LEXIS 89, 4-5 (Jan. 12, 2000) (felony failure-to-comply charge was dismissed and a reduced charge of misdemeanor failure-to-comply based upon the same conduct was later filed); *State v. Choate*, 1st Dist. Hamilton No. C-870281, 1988 Ohio App. LEXIS 1021, 2 (Mar. 23, 1988) (felony theft charge reduced by grand jury indictment to misdemeanor theft); *State v. Phillips*, 19 Ohio App.3d 85, 86-87, 482 N.E.2d 1337 (10th Dist.1984) (felony drug-abuse charge was dismissed and a reduced misdemeanor drug charge was later filed).

{¶9} But "the additional number of days that the state receives to try the defendant for the lesser charge cannot exceed the date of the speedy trial deadline of the original charge." *State v. Clark*, 11th Dist. Lake No. 2007-L-139, 2008-Ohio-2760, ¶ 30, quoting *State v. Besimer*, 4th Dist. Ross No. 95CA2110, 1996 Ohio App. LEXIS 825, 6 (Feb. 28, 1996). Therefore, "[w]hen an original charge is reduced to a lesser charge that carries a shorter speedy-trial time limit, the speedy-trial deadline will be the earlier of (1) the speedy-trial deadline for the original charge, applied from the date of the original charge, or (2) the speedy-trial deadline for the lesser charge, applied from the date that the original charge was reduced to the lesser charge." *State v. Gasnik*, 132 Ohio App.3d 612, 614, 725 N.E.2d 1162 (1st Dist.1998); *State v. March*, 12th Dist. Butler No. CA2015-08-070, 2016-Ohio-3288, ¶ 18. "In other words, to compute speedy trial time[,] we compare the deadlines for the original charge versus the reduced charge, and then use the earlier of the two deadlines." *Smith* at 5. "This method of computation effectively balances the competing interests of the accused and the state." *Id.*

4

**{¶10}** In this case, Nicholson was arrested on the initial felony vandalism charge on December 22, 2021. After that felony was ignored by the grand jury and the later felony was dismissed, he was charged on January 16, 2022, with misdemeanor criminal damaging arising from the same facts. His trial on the criminal-damaging charge occurred on February 11, 2022. He remained jailed from the date of his arrest until his trial date.

**{¶11}** For purposes of our calculation, we assume without deciding that the triple-count provision of R.C. 2945.71(E) applies to the entire period Nicholson was in jail, even though he was held for some of that period on different charges. The date of arrest does not count toward the speedy-trial calculation, *State v. Covington*, 1st Dist. Hamilton No. C-190731, 2021-Ohio-2907, ¶ 8, so the 90-day speedy-trial deadline for the original felony vandalism charge was March 23, 2022. *See* R.C. 2945.71(C)(2) and (E). The 30-day speedy-trial deadline for the lesser charge, starting from the date that the original felony was reduced to a second-degree misdemeanor, was February 15, 2022. Thus, the speedy-trial deadline applicable in this case was February 15, 2022, because it was the earlier of the two speedy-trial deadlines. *See Gasnik* at 614. Nicholson's trial began on February 11, several days before the applicable speedy-trial deadline, so no speedy-trial violation occurred. Consequently, we hold that the trial court properly denied Nicholson's motion to dismiss the misdemeanor charge related to the company truck on speedy-trial grounds. We overrule the first assignment of error.

### *Sufficiency and Weight of the Evidence*

**{¶12}** In his second assignment of error, Nicholson challenges the sufficiency of the evidence supporting his conviction for criminal damaging in the case related to the company truck, and he challenges the weight of the evidence supporting his convictions related to both the company truck and the woman's car.

**{¶13}** In reviewing the sufficiency of the evidence, we must determine whether, "after viewing the evidence in a light most favorable to the prosecution, any

rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Walker*, 150 Ohio St.3d 409, 2016-Ohio-8295, 82 N.E.3d 1124, ¶ 12, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. When reviewing a challenge to the weight of the evidence, we must review the entire record, weigh the evidence, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).

**{¶14}** Nicholson was convicted of criminal damaging in violation of R.C. 2909.06(A)(1), which provides: "No person shall cause, or create a substantial risk of physical harm to any property of another without the other person's consent: * * * Knowingly, by any means[.]" R.C. 2901.01(A)(4) defines "Physical harm to property" as "any tangible or intangible damage to property that, in any degree, results in loss to its value or interferes with its use or enjoyment." "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B).

**{¶15}** The state presented the following evidence at trial. On December 20, 2021, Cincinnati Police Lieutenant Timothy Lanter was on patrol in Clifton when a 911 caller reported that a male wearing a winter jacket, beanie cap, and backpack had been slashing vehicle tires in the area. Then a citizen flagged the officer down to report that a man walking nearby had been waving a knife in the air. The citizen directed the officer to Nicholson.

**{¶16}** The officer stopped Nicholson, whose clothing fit the description given in the 911 call: he was wearing a dark, hooded winter jacket, a grey knit hat, dark pants, two-toned tan and dark boots, and a blue backpack. The officer asked Nicholson for identification and told him someone reported that he had been slashing tires on a car. Nicholson denied it and said that he was on his way downtown. The

6

officer asked Nicholson if he had a knife, and Nicholson replied, "No . . . or shit, I might have a knife on me, but * * *."

{¶17} The officer did not conduct a search of Nicholson's person to discover if he had a knife. After checking Nicholson's identification and re-citing him for a traffic violation, the officer allowed Nicholson to leave. At the time, the officer was not aware that police would later receive reports that the tires of 57 vehicles had just been slashed or damaged within a several-block radius of where he had stopped Nicholson.

{¶18} Collin Lamping, the operation manager for ABM Parking Services ("ABM"), testified that ABM operated two parking garages, located about a block from each other, on Calhoun Street in Clifton. ABM owned a company truck, which Lamping described as a white Ford Ranger, that was parked in the east garage on Calhoun. On December 20, Lamping learned that the vehicle's front driver's side tire had been slashed and that the vehicle had to be towed from the garage.

{¶19} Lamping identified video footage from several different cameras in ABM's east and west garages taken on the evening of December 19, depicting episodes occurring within a ten-minute time span. In each, a man wearing a dark hooded winter jacket, dark pants, two-toned dark and tan boots, and a blue backpack approached a different vehicle. In one video, the man approached the front bumper of an off-camera vehicle, which Lamping identified as the ABM company truck. The man looked around and then bent down at the side of the vehicle. In another video, the man approached and made a stabbing motion toward the right front tire of a GMC Terrain vehicle owned by Franky Hendrickson. In another video, the same man approached a white Toyota Camry owned by Gabrielle Mahar, looked around several times, and then bent down near the front and then the rear tires on the driver's side of her car. Lamping provided the ABM video footage to the police.

{¶20} Gabrielle Mahar identified her white Toyota Camry as the vehicle in the ABM video footage. She testified that on December 20, she noticed that both tires on the driver's side of her car had been slashed and were completely flat.

**{¶21}** Detective Michael Morrissey was assigned to investigate the tire slashings that had occurred on December 19 and 20 in the Clifton area. He began his investigation at the point where Lieutenant Lanter had stopped Nicholson and then worked his way back toward the ABM parking garages on Calhoun Street, about five blocks away. He testified that there was a "path of slashed tires" along multiple streets in the area. He reviewed the ABM video footage, and, as the investigation progressed, he reviewed footage from other cameras in the area. In a video recorded by a city-owned surveillance camera, a man dressed similarly to the man seen in the ABM videos bent down near a vehicle owned by Jacob Pillage, later discovered to have sustained damage to its tires. The detective identified Nicholson as the man in all the videos.

**{¶22}** Police arrested Nicholson on December 22 and charged him with damaging the vehicles owned by ABM, Mahar, and Hendrickson. (The charge involving the ABM vehicle was the first felony vandalism charge and the charges involving the other two cars were misdemeanors). According to Detective Morrissey, at the time of the arrest, Nicholson was wearing "[t]he same two-tone boots, darker pants, darker jacket, beanie hat" that he was seen wearing in the videos. Later, on January 16, 2022, Nicholson was charged with criminal damaging related to the Pillage vehicle and with the criminal-damaging charge related to the ABM company truck.

**{¶23}** Neither Pillage nor Hendrickson testified at trial, and the trial court granted Nicholson's Crim.R. 29 motion to dismiss the charges related to their vehicles. The court found him guilty of the charges related to the ABM and Mahar vehicles.

**{¶24}** Nicholson now argues that his conviction for criminal damaging related to the ABM company truck was based upon insufficient evidence. Specifically, he asserts that the testimony of the ABM manager differed from the allegations in the complaint as to the model of Ford truck damaged and as to the number of tires that were damaged.

{¶25} The complaint in that case tracked the language of R.C. 2909.06(A)(1), the criminal-damaging statute—it alleged that Nicholson "did knowingly, by any means, cause a substantial risk of physical harm to the property of ABM Parking Services without his [sic] consent[.]" Additionally, the complaint noted: "The complainant states that this complaint is base[d] on did cut [sic] 2 vehicle tires on a 1994 Ford F-150 work vehicle * * * while parked at the location of 211 Calhoun St." Although the complaint noted that two tires on a Ford F-150 work vehicle were damaged and the employee testified that one tire on a Ford Ranger work vehicle was damaged, the testimony established the elements of the offense as charged in the complaint—Nicholson caused physical harm to the property of ABM Parking Services. Any discrepancy between the testimony and the allegations regarding the vehicle model and number of tires damaged was for the trier of fact to resolve. Therefore, we hold that Nicholson's conviction for criminal damaging related to the ABM company truck was based upon sufficient evidence.

{¶26} With respect to the weight of the evidence, Nicholson argues that Detective Morrissey's belief that Nicholson was the person depicted in the surveillance videos "lacks credibility." But the trial court, as the trier of fact, was in the best position to judge the witness's credibility. *See State v. James*, 1st Dist. Hamilton No. C-210597, 2022-Ohio-3019, ¶ 9; *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. Following our review of the testimony and the video evidence, we are convinced that the trial court did not lose its way or commit a manifest miscarriage of justice in convicting Nicholson of both offenses. *See Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541. We hold that Nicholson's convictions were supported by the weight of the evidence, and we overrule the second assignment of error.

### Restitution

{¶27} In his third assignment of error, Nicholson argues that the trial court erred when it ordered him to pay restitution. Specifically, he asserts that the court

failed to hold a hearing, even though the amount of restitution was in dispute. The state concedes the error.

**{¶28}** If a trial court decides to impose restitution and the defendant disputes the amount of restitution, the court must hold an evidentiary hearing. R.C. 2929.28(A)(1). Because Nicholson disputed the amount of restitution, the trial court erred by failing to hold an evidentiary hearing. We sustain the third assignment of error. We reverse Nicholson's sentences to the extent that they impose restitution, and we remand the matter to the trial court to hold an evidentiary hearing. Our disposition renders moot Nicholson's additional argument about the court's failure to impose restitution in open court at the sentencing hearing. We affirm Nicholson's convictions and sentences in all other respects.

Judgments affirmed in part, sentences reversed in part, and cause remanded.

**ZAYAS** and **BERGERON, JJ.,** concur.

Please note:

The court has recorded its own entry this date.