[Cite as *State v. King*, 2026-Ohio-873.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

| | | |
|---|---|---|
| STATE OF OHIO | | C.A. No. 2024CA0034-M |
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| DARREN D. KING | | COURT OF COMMON PLEAS COUNTY OF MEDINA, OHIO |
| Appellant | | CASE No. 2023-CR-0621 |

DECISION AND JOURNAL ENTRY

Dated: March 16, 2026

---

STEVENSON, Judge.

**{¶1}** Appellant Darren King appeals from his conviction in the Medina County Court of Common Pleas, challenging the trial court's imposition of a consecutive jail term as part of community control and asserting an ineffective assistance of counsel claim. This Court affirms.

I.

**{¶2}** Mr. King was charged with two counts of felonious assault in violation of R.C. 2903.11(A)(2)/(D)(1)(a), felonies of the second degree. The indictment alleged two victims, J.M. and K.G. The State alleged that J.M. and K.G. were on or about to get on a motorcycle when Mr. King knowingly hit the motorcycle with his 2002 Chevy Avalanche ("the truck"). Mr. King pleaded not guilty to the charges, and the matter proceeded to a jury trial.

**{¶3}** The State first called J.M. to testify at trial and the trial court granted its motion to have J.M. declared a hostile witness. J.M. testified that he was in the parking lot of The Family Tavern bar ("the bar") on August 8, 2023, when he got on his motorcycle with K.G. He testified

that Mr. King did not hit his motorcycle. J.M.'s trial testimony was inconsistent with what he had reported to the police. Videos from the officers' body worn cameras were played at trial and admitted into evidence. J.M. is seen and heard in the videos saying that Mr. King was "aiming" for K.G., that Mr. King hit the motorcycle, and that his motorcycle was damaged in the incident.

{¶4} K.G., a former girlfriend of Mr. King, testified that she went to the bar on August 8, 2023, with J.M. and two other individuals. Mr. King started texting K.G. while she was at the bar and he told her in one text that he was in the bar's parking lot. K.G. shut the bar's blinds and locked the doors to prevent Mr. King from entering the bar.

{¶5} K.G. saw Mr. King's truck in the parking lot when she exited the bar. She testified that Mr. King started his truck and "drove toward us head-on" after she got on the motorcycle with J.M. She testified that Mr. King hit the motorcycle with the front end of his truck and that pieces of the motorcycle fell to the ground. She also testified that fluid was leaking from the motorcycle after it was struck. K.G. recalled seeing damage to J.M.'s shirt after the incident. Although she did not sustain a physical injury, K.G. described the incident as "a traumatic experience." She texted Mr. King after the incident stating, "you just tried to kill me!!!!!!" Mr. King sped out of the parking lot after hitting the motorcycle. K.G. testified that Mr. King later asked her to recant the incident statement she had given to the police.

{¶6} The bartender testified that she went to the parking lot for safety reasons before closing the bar on the night of the incident. It was not unusual for the bartender to conduct a safety check of the parking lot before closing. The bartender testified that Mr. King's truck was in the parking lot when she went out for the safety check. The bartender casually knew K.G. and she was aware that K.G. had previously been in a relationship with Mr. King. The bartender told Mr. King that the bar was closing and that he needed to leave. The bartender then went back into the bar.

{¶7} The bartender exited the bar with K.G., J.M., and three other bar patrons. She noticed upon exiting that Mr. King had moved his truck and she again approached the truck to speak to Mr. King. She testified that Mr. King drove his truck around her as she was approaching and that he "struck the motorcycle" that K.G. and J.M. were standing next to and about to get on. Mr. King did not stop after hitting the motorcycle and he sped out of the parking lot.

{¶8} The bartender testified that J.M.'s shirt was torn in the incident and that "he was bleeding from his arm." She did not observe any physical injuries to K.G., but testified that K.G. "was very upset, visibly shaken up." The bartender testified that the motorcycle was damaged in the incident and that motorcycle parts were "laying in the parking lot[.]" She also testified that a piece of the truck was left in the parking lot after it struck the motorcycle.

{¶9} Brunswick Hills Police Officer Zachary Getto responded to a 911 call reporting the incident in the bar parking lot. He observed that K.G. was "pretty visibly shook up, emotional" at the scene. Officer Getto testified that he observed damage to the motorcycle. Officer Getto also observed a piece of a front bumper laying in the parking lot and he testified that the bumper piece "was laying . . . just south of where the bike that had been struck[.]" Officer Getto concluded that, based on his investigation, "a vehicle had struck the motorcycle and left the parking lot." He was unable to locate Mr. King after the incident.

{¶10} Mr. King testified in his defense at trial. He testified that K.G. asked him to pick her up from the bar on August 8, 2023. He was in the parking lot when the bartender informed him that it was "last call" and that he needed to leave. Mr. King was not there for "last call" and did not leave.

{¶11} Mr. King talked to K.G. on the phone after "last call." He told K.G. that it was getting late and that she needed to hurry up. Mr. King testified that he pulled closer to the bar's

front door "so [K.G.] could walk out and get right in and make things fast[.]" He claimed that people started yelling at him when they came out of the bar, that motorcycles started revving, and that he "just wanted to leave the scene." Mr. King just "[p]ull[ed] out and le[ft][.]" He denied hitting the motorcycle. He testified that K.G. had lied in the statement she gave police and that he asked her to tell the truth. Mr. King sold his truck after the August 8, 2023, incident without it being examined or inspected.

{¶12} During a break in Mr. King's testimony, defense counsel expressed her intent to have a mechanic testify at trial. She wanted a mechanic to testify about bumpers on a 2002 Chevrolet Avalanche and "explain what kind of damage would be caused to a motorcycle" that is hit by an Avalanche. Counsel acknowledged that she had identified the mechanic the day before and that she did not have a written report from the mechanic. She argued that the mechanic's testimony was necessary in light of K.G.'s testimony that Mr. King hit the motorcycle head-on with his truck and the bartender's testimony that Mr. King had spun around her in the parking lot. Counsel argued that such testimony had only "unfolded during trial" and that she "could not possibly have prepared for" said testimony. She acknowledged that the mechanic was not an accident reconstructionist.

{¶13} The State objected to the mechanic's testimony and argued that it would be prejudicial to allow expert witness testimony without a report. The trial court allowed the mechanic to testify, but it limited the testimony to whether the automotive piece found in the bar parking lot came from a 2002 Chevrolet Avalanche.

{¶14} The mechanic testified that "[f]rom the picture it does not seem like [the piece of bumper] came from an Avalanche." He acknowledged on cross-examination that his opinion would change based on the trim model of Mr. King's truck and that he had never seen the truck.

{¶15} Mr. King also called S.G. to testify at trial. S.G., who was not present at the time of the incident, testified that Mr. King's truck was not missing any part of its bumper nor was it damaged after the incident. She testified on cross-examination that Mr. King's truck "got fixed and . . . sold" after the incident. She did not elaborate on what got fixed, stating that "I wasn't there so. . . I don't want to say what got fixed or didn't get fixed." S.G. also testified on cross-examination that Mr. King sold the truck to J.M. after the incident.

{¶16} Mr. King had also called a records custodian for the Brunswick Hills Police Department to testify at trial and to authenticate police records and documents. Exhibits including the officers' body worn camera videos, text messages between Mr. King and K.G., jail phone calls, and photographs were introduced at trial and admitted into evidence.

{¶17} The jury found Mr. King guilty of both counts of felonious assault. The trial court accepted the jury's findings and sentenced Mr. King to five years of community control, with 180 days on each count to be served in the Medina County Jail, to be served consecutively, with credit for time served. The court ordered that Mr. King have no contact with K.G. and it lifted a prior no contact order related to J.M. Mr. King appeals his conviction and sentence raising two assignments of error for this Court's review.

I.

**ASSIGNMENT OF ERROR NUMBER ONE**

**WHETHER THE IMPOSITION OF CONSECUTIVE SENTENCES WAS CONTRARY TO LAW DUE TO THE FAILURE OF THE TRIAL COURT TO MAKE STATUTORILY ENUMERATED FINDINGS AT THE SENTENCING HEARING[.]**

{¶18} Mr. King argues in his first assignment of error that the imposition of consecutive sentences was contrary to law where the trial court failed to make the required statutory findings

at sentencing. This Court finds that Mr. King's assignment of error is moot and declines to address it.

{¶19} The trial court sentenced Mr. King to "five (5) years of community control[.]" A condition of community control was that Mr. King "serve 180 days in the Medina County Jail on each count, to be served consecutively to one another, with credit for 34 days served[.]" The argument presented in Mr. King's first assignment of error is limited to the community control condition that he serve 180 days in jail on each count, to be served consecutively.

{¶20} Mr. King challenges his sentence as a decision by the trial court to impose jail time. The trial court, however, placed Mr. King on community control and it imposed jail sentences as terms of community control. Thus, we must consider whether the trial court erred in imposing jail sentences as conditions of community control.

{¶21} As a general rule, courts will not resolve issues that are moot. *Miner v. Witt*, 82 Ohio St. 237 (1910), syllabus. "'The duty of this court, as of every other judicial tribunal, is to decide actual controversies by a judgment which can be carried into effect, and not . . . to declare principles or rules of law which cannot affect the matter in issue in the case before it.'" *Id.* at 238, quoting *Mills v. Green*, 159 U.S. 651, 653 (1895). In particular, "'[i]f an individual has already served his sentence and is only questioning whether or not the sentence was correct, there is no remedy that can be applied that would have any effect in the absence of a reversal of the underlying conviction.'" *State v. Bellomy*, 2013-Ohio-3187, ¶ 23 (9th Dist.), quoting *Columbus v. Duff*, 2005-Ohio-2299, ¶ 12 (10th Dist.). *Bellomy* involved a felony conviction where the appellant's challenge on appeal was limited to the imposed length of his served sentence. *Bellomy* at ¶ 21.

{¶22} At oral argument counsel agreed that Mr. King has satisfied the condition of community control requiring him to serve 180 days in jail on each count consecutively with credit

for time served. In his appellant brief, Mr. King asked for his sentence to be reversed, and his case remanded for resentencing. Because he has already served the two periods in jail as part of his community control sanctions, we could provide him with no relief even if the trial court had erred in imposing a consecutive jail term as part of his community control. *See State v. Stevens*, 2012-Ohio-4095, ¶ 28 (9th Dist.) (defendant "provided no compelling argument as to why we should address [the issue of whether the trial court erred in imposing the maximum sentence] when we could provide him with no relief, even assuming the trial court erred in fashioning this sentence" when he had already completed the sentence). Following the rationale of *Bellomy* in this matter, no remedy we apply would affect the fact that Mr. King completed his local jail sentence community control sanction.

{¶23} While *In re S.J.K*, 2007-Ohio-2621 and its progeny caution us that we must be careful not to consider an appeal of an entire conviction moot when collateral disability or loss of civil rights may flow from that conviction, those concerns are not present here. We are not concluding that Mr. King's entire appeal is moot as he is still serving his community control sentence, which is a collateral consequence of his conviction; we will therefore address the merits of his second assignment of error challenging his conviction. We are concluding, rather, that Mr. King's challenge to one of his community control sanctions is moot as he has already completed that sanction and nothing we can order now can provide him with any relief for the time he has served.

{¶24} Accordingly, for the reasons set forth above, this Court finds that Mr. King's first assignment of error is moot.

## ASSIGNMENT OF ERROR NUMBER TWO

**APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL WHEN THE EXPERT TESTIMONY OF HIS MECHANIC WAS**

**PRECLUDED DUE TO THE FAILURE OF TRIAL COUNSEL TO TIMELY DISCLOSE THE EXISTENCE OF THE EXPERT AND PROVIDE HIS REPORT TO THE STATE[.]**

{¶25} Mr. King argues in his second assignment of error that he was denied effective assistance of counsel when the expert testimony of his mechanic was precluded due to the failure of trial counsel to timely disclose the expert and provide his report to the State. We disagree.

{¶26} To prevail on a claim of ineffective assistance of counsel, Mr. King must establish (1) his counsel's performance was deficient to the extent that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and (2) but for his counsel's deficient performance, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A deficient performance is one that "fall[s] below an objective standard of reasonable representation." *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph two of the syllabus. A court, however, "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland* at 689, quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955). In addition, to establish prejudice, Mr. King must show that there existed "a reasonable probability that, but for his counsel's errors, the outcome of the proceeding would have been different." *State v. Sowell*, 2016-Ohio-8025, ¶ 138.

{¶27} Both prongs under *Strickland* must be established to support an ineffective assistance of counsel claim. *Strickland* at 687. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691.

{¶28} Mr. King presents a limited deficiency argument on appeal. He argues that trial counsel was deficient for her failure to timely identify the mechanic as an expert witness. He relies upon *State v. Gough*, 2004-Ohio-4550, ¶ 46 (5th Dist.) to support his position that the failure to file a notice of alibi constitutes deficient performance. The State points out that *Gough* is distinguishable as trial counsel in that case admitted negligence in not timely submitting a notice of alibi. *Gough* at ¶ 48. It points out that the trial court still allowed the mechanic to testify as to whether the piece of bumper found in the parking lot could have been from Mr. King's truck.

{¶29} This Court concludes that the deficiency component of the *Strickland* framework is dispositive in this case. Accordingly, we will address only that aspect of Mr. King's ineffective assistance claim. *See State v. Clifford*, 2002-Ohio-4531, ¶ 45 (9th Dist.).

{¶30} This Court has consistently recognized that "'[s]peculation regarding the prejudicial effects of counsel's performance will not establish ineffective assistance of counsel.'" *State v. Buzek*, 2015-Ohio-4416, ¶7 (9th Dist.), quoting *State v. Zupancic*, 2013-Ohio-3072, ¶ 4 (9th Dist.). As previously set forth, Mr. King sets forth a limited deficiency argument. He seems to assume that the failure of counsel to timely identify a mechanic, alone, was deficient without setting forth any argument as to why counsel should have known earlier that the mechanic's testimony would be necessary. Unlike in *Gough*, trial counsel explained to the court that the mechanic's testimony had become necessary in light of the trial testimony of K.G. and the bartender that Mr. King hit the motorcycle head-on and that he had spun around in the parking lot. Counsel argued that the need for the mechanic's testimony had only "unfolded during trial" and that she "could not possibly have prepared for" said testimony.

{¶31} Mr. King sets forth no argument as to why counsel should have known earlier that a mechanic's testimony would be necessary. He fails to argue or establish how the failure to

identify the mechanic earlier is tantamount to ineffective legal representation and this Court declines to construct such an argument on his behalf. *See State v. Carter*, 2017-Ohio-8847, ¶ 38 (9th Dist.), citing *Cardone v. Cardone*, 1998 WL 224934, *8 (9th Dist. May 6, 1998). Mr. King's second assignment of error is, accordingly, overruled.

III.

**{¶32}** For the reasons stated above, we decline to address Mr. King's first assignment of error on the basis that it is moot. Mr. King's second assignment of error is overruled. The judgment of the Medina County Court of Common Pleas is affirmed.

Judgment affirmed.

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

SCOT STEVENSON
FOR THE COURT

SUTTON, J.
CONCURS.

FLAGG LANZINGER, P. J.
CONCURRING.

{¶33}   I concur with the majority's decision.  I write separately to clarify that the trial court had authority to impose a jail term as part of King's community control sanction in this case.

{¶34}   In *State v. Anderson*, the Ohio Supreme Court made clear that prison terms and community control sanctions are alternative sanctions for purposes of felony sentencing.  *State v. Anderson*, 2015-Ohio-2089, ¶ 28.  More specifically, it held that "as a general rule, when a prison term and community control are possible sentences for a particular felony offense, absent an express exception, the court must impose either a prison term or a community-control sanction or sanctions."  *Id.* at ¶ 31; *State v. Paige*, 2018-Ohio-813, ¶ 6 (same).  The Ohio Supreme Court later characterized felony sentences that include a prison term and a community control sanction as "[s]plit sentences" and reiterated that they are "prohibited in Ohio."  *Paige* at ¶ 6.

{¶35}   The rule set forth in *Anderson* expressly applies to prison terms for felony offenses, not jail terms, which are not the same.  *See Anderson* at ¶ 31; R.C. 2929.01(R) (defining "[j]ail); R.C. 2929.01(A)(A) (defining "[p]rison"); *State v. Woods*, 2026-Ohio-351, ¶ 7 (8th Dist.) (acknowledging that prison and jail are not "synonymous.").  Notwithstanding, courts have conflated prison terms and jail terms, concluding that *Anderson* stands for the proposition that a trial court cannot impose "incarceration" and a community control sanction for the same offense.  *See, e.g.*, *State v. Beauchamp*, 2022-Ohio-738, ¶ 2, 17 (1st Dist.) (addressing a misdemeanor offense and relying on *Anderson* to conclude that a "trial court can either impose community

control or incarceration."); *State v. James*, 2022-Ohio-3019, ¶ 25 (1st Dist.) (citing *Anderson* and stating that a "trial court is authorized to impose either a prison or jail term, or community control for a particular offense."). That is a misinterpretation of the law.

{¶36} By statute, a trial court is authorized to impose "a term of up to six months in a jail" as part of a community control sanction if a prison term is not required for the underlying felony offense. R.C. 2929.15(A)(1); R.C. 2929.16(A)(2); *see* R.C. 2929.01(E) (defining "[c]ommunity control sanction" to include community residential sanctions under R.C. 2929.16). This does not conflict with *Anderson*, which was limited to prison terms for felony offenses, not jail terms. *See Woods* at ¶ 4-8 (distinguishing jail from prison, and rejecting the defendant's argument that the trial court violated *Anderson* by imposing a split sentence when it sentenced her to both community control and a jail term). Because the trial court sentenced King to jail, not prison, its sentence does not violate *Anderson*'s prohibition against split sentences for felony offenses.

{¶37} Having clarified that the trial court was authorized to impose a jail term as part of King's community control sanction in this case, I agree with the majority's conclusion that this Court can provide King with no relief regarding the trial court's imposition of consecutive jail terms because King has completed his jail sentence. *See State v. Stevens*, 2012-Ohio-4095, ¶ 28 (9th Dist.). I also agree with the majority's decision to overrule King's second assignment of error. Thus, I concur with the majority's decision.

APPEARANCES:

ROBERT T. MCDOWALL, Attorney at Law, for Appellant.

S. FORREST THOMPSON, Prosecuting Attorney, and STEFANIE H. ZARANEC, Assistant Prosecuting Attorney, for Appellee.